UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYLEON J SILAS-FOREMAN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | Case No. 14-cv-03340-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 25 |

## INTRODUCTION

Plaintiff Jayleon J Silas-Foreman ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 21, 25. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's Motion and **DENIES** the Commissioner's Cross-Motion for the reasons set forth below.

## BACKGROUND

**A.     Factual Background**

Plaintiff was born on July 21, 1993. AR 121. He had an early history of combative behavior, and in January 2007, he completed a psychological evaluation while he was in detention. AR 172. The results of that evaluation are not in the record.

In May 16, 2007, when Plaintiff was 13 years old, he was struck in the head once and

twice in the chest with a baseball bat during an altercation and sustained significant head injuries and a spleen injury. AR 221, 244. When he was brought into the Marin County Emergency Room, his doctors gave him a Glasgow coma score of 13[1]; however, when he came back from a CT scan his coma score had dropped to a "6 at best." AR 223. A head CT from June 2007 showed Plaintiff had a nondisplaced left parietal skull fracture, left parietal-occipital lobe contusions and parenchymal hematomas, a one to two millimeter left to right midline shift, and scalp swelling. AR 229, 233. He was discharged from the hospital on July 1, 2007. AR 246. Plaintiff's hospital Discharge Summary noted he had suffered a "[q]uestionable seizure prior to admission" and had him "continue[] on Dilantin for prophylaxis." AR 244. It also noted he had "[i]mproving neurological function though [was] still having difficulty with fine motor skills as well as ambulation and speech articulation" and was a "candidate for active rehabilitation." *Id.*

A speech language pathologist evaluated Plaintiff in June 2007 and wrote he "demonstrate[d] significant changes to his language and cognitive skills[,]" and "significant impairments in the processes that underlie learning, such as attention, memory, processing, and self-monitoring." AR 251-52. A physical therapist saw Plaintiff in July 2007 and reported he was "oriented to self, time, and place, but [wa]s often unaware of his deficits." AR 249-50. She also reported he had "poor short-term memory," and "difficulty in following even simple directions." AR 249.

Physiatrist Jacob A. Neufeld, M.D., consultatively examined Plaintiff in July 2007, and found Plaintiff had a "pre-morbid behavioral problem." AR 242-43. Dr. Neufeld informed Plaintiff, his mother, and his aunt and uncle that he would need "24/7 supervision" and to monitor his behavior for "sudden outbursts, inability to follow instructions, poor sleep, or depression[.]" AR 242-43.

On July 23, 2007, an application for SSI was filed on behalf of Plaintiff. AR 16, 121-27. The application alleged disability beginning on June 15, 2007. AR 121.

---

[1] AR 223 notes an initial Glasgow coma score of 15 and 13. The score of 13 is referenced more frequently the record.

2

Another speech pathologist evaluated Plaintiff in August 2007. AR 238. She assessed that he made improvement and would continue to do so over time, although she also noted Plaintiff "demonstrate[d] a variety of impairments . . . that underlie learning[,] including memory, organization processing (visual and auditory information), and self-monitoring." AR 238-40.

Dr. Neufeld evaluated Plaintiff again in November 2007 and found it was "clear that [Plaintiff] suffers from a premorbid behavioral problem and then the severe traumatic brain injury, which [] also compromised some of his higher executive functioning skills." AR 236.[2] Dr. Neufeld also noted that Plaintiff may have experienced a seizure in the interval of time between his last visit and that he was taking Dilantin. *Id.* Dr. Neufeld's evaluation concluded by noting he was "concerned that [Plaintiff] may not be able to learn new behaviors which [would] hopefully keep him out of trouble." *Id.* In December 2007, Dr. Neufeld evaluated Plaintiff again and discontinued his Dilantin. AR 235. Dr. Neufeld also noted that if there were significant changes in Plaintiff's behavior in the following month, "then it is clear that he will have to be on another mood-stabilizing neuroleptic." *Id.* He noted, however, that Plaintiff "did have a premorbid behavioral disorder." *Id.*

In July 2008, Dr. Neufeld examined Plaintiff again, noting at the time Plaintiff was "a 14-year-old with a premorbid behavioral problem status post traumatic brain injury with continued behavioral issues." AR 234. He also noted that "[t]here apparently have been some significant behavioral issues that have occurred since he was last seen," but "it [wa]s very difficult for [Dr. Neufeld] to ascertain whether these are worsening behaviors compared to his premorbid state or new behaviors." *Id.* Dr. Neufeld reported that since the last time he evaluated Plaintiff, Plaintiff had been seen by a psychiatrist who prescribed Plaintiff with Seroquel, Trileptal, and Prozac, "secondary to his behavioral disorder and depression." *Id.* Dr. Neufeld wrote that this psychiatrist was "addressing [Plaintiff's] medication management appropriately." *Id.*

---

[2] The ALJ wrote that this evaluation occurred in July 2007, not later in November 2007. *See* AR 23.

3

A State agency psychological consultant filled out a Social Security Administration ("SSA") Childhood Disability Evaluation Form for Plaintiff on July 18, 2008; however, because Plaintiff missed two scheduled consultative psychological evaluations, the psychologist marked that there was insufficient evidence upon which to assess the claim of disability. AR 287-94. On July 23, 2008, the SSA denied Plaintiff's claim, finding he did not qualify for disability benefits. AR 16, 33. Plaintiff filed a request for reconsideration on September 30, 2008 (AR 55), but an Administrative Law Judge ("ALJ") denied the request on August 5, 2009, because there was no evidence that a reconsideration determination had been made (AR 54). In October 2009, the case was sent for a reconsideration decision. AR 50.

During this time, Plaintiff was admitted to Trinity Sacramento in September 2009 by Marin County Probation as a 602 Ward of the Court. AR 192. This placement was "due to substance abuse, boundary issues, aggression, and runaway behaviors." *Id.* At Trinity, Plaintiff met regularly with a psychiatrist, Benjamin Kaufman, M.D., as well as Diane Roman, an LMFT for individual therapy. AR 193. He was also active in Recovery Groups with Bill Burg, LMFT. *Id.* He continued taking Seroquel during this time. *Id.* When Plaintiff was discharged from Trinity in January 2010, the Clinical Coordinator and Program administrator noted Plaintiff had earned a 3.11 GPA, and he was able to complete basic household chores. AR 192. They also noted, however, that "further psychological and/or neurological testing is in order to assess Jayleon's risk to the community[,]" and that "[t]here is concern that the head injury that Jayleon suffered earlier could have resulted in more damage to his emotional development than previously thought." AR 194. They wrote that "[a]lthough on the surface he seemed to be making progress[,]" Plaintiff's behavior "show[ed] a deep level of maladaptive development." *Id.*

Plaintiff's SSI claim was denied upon reconsideration on March 11, 2010. AR 35. Previously, in December 2009, another State agency psychological consultant had filled out a SSA Childhood Disability Evaluation Form for Plaintiff, again reaching the conclusion there was insufficient evidence on which to assess the claim of disability. AR 295-300. The denial of Plaintiff's SSI claim was based on insufficient evidence of disability due to Plaintiff not attending

4

two more SSA medical examinations. AR 35-36, 295-300.

Plaintiff then filed a request for hearing by an ALJ on April 1, 2010. AR 34. In December 2010, Plaintiff's school psychologist issued a psychoeducational assessment of Plaintiff, in which, among other things, she notes that his "most recent complete psychoeducational evaluation was conducted in 2007 by Dr. Mitchell Biermann and Bart Jones." AR 213. At the time, Dr. Biermann reported the results of the social-emotional assessment of Plaintiff "point to a student who is displaying obvious and significant signs of emotional distress." *Id.* While they concluded that Plaintiff's cognitive functioning, including learning and memory skills, and his academic skills were average, they also noted "his emotional condition, impulsivity and distractibility were negatively impacting his academic performance." *Id.* The December 2010 psychoeducational assessment found that Plaintiff "continue[d] to meet eligibility criteria as a student with an Emotional Disturbance." *Id.* Plaintiff was "a student of estimated average intelligence" and who "continue[d] to meet eligibility criteria for special education services." AR 214. The report further notes Plaintiff stated that "since his injury[,] he has been more emotional, more jumpy, and prone to worry." *Id.*

A hearing before an ALJ was scheduled for March 21, 2011, but was cancelled because Plaintiff was unavailable. AR 16. Around this time, Plaintiff's representative, Andrew Ragnes, wrote a letter to the ALJ identifying deficiencies in the administrative record, including confusion over whether the record in the case was to be a paper record or an electronic record. AR 162.

In the meantime, Plaintiff completed high school at Juvenile Hall on March 10, 2011, after passing the high school exit exams with the second highest scores at his school. AR 174, 186. He had part-time work experience doing janitorial work for a couple hours a week at a youth boxing recreation facility. AR 175, 187, 189.

Psychologist Jules Burstein, Ph.D. consultatively evaluated Plaintiff in April 2011 at the request of his public defender, who represented Plaintiff after he was charged with felony grand theft auto. AR 316. Dr. Burstein noted that after the May 2007 incident, Plaintiff said he "became more irritable, and became angry much more easily"; Dr. Burstein noted these were

5

"characteristics often associated with major head trauma." AR 319. Dr. Burstein also confirmed Plaintiff's mother said that "after [Plaintiff's] head trauma in 2007, he definitely experienced changes in irritability, anger, and impulsive behavior," which Dr. Burstein notes are all "frequent consequences of minimal brain damage." AR 321. Plaintiff, however, admitted to Dr. Burstein he had "been out of control in the past," and was "learning how to deal with stress and conflicts without resorting to violence." AR 319. Plaintiff reported he received counseling from Mike Ertz, MFT, of Marin County Community Mental Health for over two years, and starting in September 2010, had attended counseling twice weekly with Cesar Lagleva, MFT, at Juvenile Hall. AR 319-20. Plaintiff stated he intended to continue counseling with Mr. Lagleva. AR 320. Dr. Burstein ultimately concluded Plaintiff was not an imminent threat to the community at the time of the evaluation. AR 324.

Plaintiff attained majority age in July 2011. *Id.* On September 14, 2011, ALJ David R. Mazzi conducted a hearing. AR 349-64. Andrew Ragnes, Plaintiff's non-attorney representative, appeared on his behalf. AR 351. Plaintiff did not attend the hearing. AR 353. The hearing consisted of testimony from pediatrician and neurologist David T. Huntley, M.D., a medical expert. AR 16; 353-63. ALJ Mazzi held a supplemental hearing on July 30, 2012, with Plaintiff appearing by video. AR 365-76. Mr. Ragnes appeared in person. AR 367.

At the first hearing, Dr. Huntley noted he did not have anything documented or anything in the record of "actual testing" of Plaintiff as to whether he had cognitive defects. AR 355-56. The ALJ said to Dr. Huntley, "it sounds like you're saying you don't have much there [] to go on as it is other than the history, no testing, no -- . . . assessments." AR 356. Dr. Huntley stated that while he understood Plaintiff "has some sociopathic tendencies . . . to say it's caused by that one incident, [] I don't think is substantiated in the record." AR 357-58. Dr. Huntley went on to note that he believes Plaintiff does have a psychiatric disorder, which may fit Listing criteria 12.08 and 12.09.[3] AR 358. Dr. Huntley indicated a psychiatrist should be able to say whether he fits the

---

[3] The ALJ must determine whether the claimant's impairment(s) meets, medically equals, or functionally equals an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P,

criteria. *Id.* When Mr. Ragnes questioned him, Dr. Huntley indicated he would like to see more recent evidence of Plaintiff's behavior. AR 360. Dr. Huntley further noted that Listing criteria 12.04, another psychiatric diagnosis, would apply to Plaintiff as well. AR 361. Dr. Huntley suggested a Personality Test and a range of psychometric testing "that would also clarify the issue[,]" noting that he did not "want to say we might have deficits in relation to where [Plaintiff's] trauma was, but . . . . [i]f there's any residual from [the trauma] there's going to be things . . . that are going to pan out" from the tests. AR 362. He also noted that effects of closed head trauma may last for two years. AR 360. Dr. Huntley concluded by noting, "[j]ust to have a psychiatrist review things, do a personality test, . . . . it's going to clarify that his issue I feel is one that's inherited and psychiatric." AR 362.

Following this testimony, the ALJ stated he "would agree that, as [Plaintiff] indicated in [his] brief and as the doctor indicated and as the record suggests that the . . . psychological testing on a consultative examination would be warranted." AR 363. The ALJ also recognized that the "MMPI," a "battery" of psychometric testing, and IQ testing would be appropriate. AR 363. There is no indication any of these tests were performed on Plaintiff following this decision.

At the Supplemental Hearing, the ALJ questioned Plaintiff and asked if he had been having any seizures. AR 369. Plaintiff said no, but that he has "blackout moments" where he becomes dizzy and has to sit down. *Id.* He explained that this would happen around four times a week. Plaintiff also explained that he cannot "move around so fast." *Id.* Plaintiff also indicated that he continued to take a medication like Seroquel. *Id.* When questioned by Mr. Ragnes, Plaintiff said he has "nightmares about baseball bats talking to [him]" and "the music radio box kind of talking to [him]." AR 371, 373. He explained he mostly talks to his mental health counselor about his inner thoughts. AR 374-75. Plaintiff also noted he was on Prozac and Seroquel in the past. AR 371.

---

Appendix 1 (the "Listing"). 20 C.F.R. § 416.924(a), (d); 20 C.F.R. § 416.925. Here, Listing Criteria 12.08 refers to a Personality Disorder, while Listing Criteria 12.09 refers to a Substance Addiction Disorder.

7

**B.     The ALJ's Decision & Findings**

After the July 30, 2013 hearing, the ALJ issued a decision unfavorable to Plaintiff.  AR 13-29c.  Because Plaintiff was under the age of 18 at the time of the application and attained age 18 before the date of his decision, the ALJ considered whether Plaintiff was disabled under both standards.  AR 16.  The SSA has established a different sequential evaluation process for childhood and adult standards of disability.

1.     Childhood Standard

"SSI" is available for an individual under the age of 18 when he is "disabled."  42 U.S.C. § 1382c(a)(3)(C)(i); *see also id.* § 1381a.  A child is "disabled" if he "has a medically determinable physical or mental impairment, which results in marked and severe limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id*. § 1382c(a)(3)(C)(i); *Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000).  "The claimant bears the burden of establishing a prima facie case of disability."  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995) (citing *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992), *cert. denied*, 517 U.S. 1122 (1996)).

The Commissioner has established a three-step sequential evaluation process for the ALJ to follow when considering the disability application of a minor claimant.  20 C.F.R. § 416.924.  At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* § 416.924(a).  If the claimant engages in substantial gainful activity, he is not disabled regardless of his medical condition, age, education, or work experience.  *Id.* § 416.924(a)-(b).  Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 23, 2007, the date of his application.  AR 21.

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ must determine whether the claimant has a "severe" medically determinable impairment or combination of impairments.  20 C.F.R. § 416.924(a).  For a child, a medically determinable impairment or combination of impairments is not severe if it is a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. . . ."  *Id.* § 416.924(c).  If

8

the claimant's impairment(s) is not severe, the child is not disabled, and SSI is denied at this step. *Id.* § 416.924(a), (c). The ALJ determined that Plaintiff had the following severe impairments: status-post traumatic brain injury and a personality disorder. AR 21.

If it is determined that one or more impairments are severe, at step three, the ALJ must determine whether the claimant's impairment(s) meets, medically equals, or functionally equals an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing"). 20 C.F.R. § 416.924(a), (d); 20 C.F.R. § 416.925. The mere diagnosis of an impairment in the Listing is insufficient to sustain a finding of disability. *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). The impairment must also satisfy all of the criteria of the Listing. 20 C.F.R. § 416.925(d). If the claimant's impairment(s) meets or equals a Listing impairment, and meets the durational requirement, disability is presumed and benefits are awarded. *Id.* § 416.924(a), (d).

If the claimant does not meet or medically equal a Listing, he may still be considered disabled if an impairment results in limitations that "functionally equal the listings." *Id.* § 416.924(a), (d); *id.* § 416.926a(a). In determining whether the severe impairment(s) functionally equals the Listings, the ALJ must assess the claimant's functioning in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical wellbeing. *Id.* § 416.926a(b)(1). To "functionally equal" the Listings, the impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.* § 416.926a(a), (d). In this assessment, the ALJ must look at "how appropriately, effectively, and independently [claimant] preform[s] [his] activities compared to the performance of other children [claimant's] age who do not have impairments." *Id.* § 416.926a(b).

A child has a "marked" limitation in a domain when his impairment(s) "interferes seriously" with his "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). The regulations also provide that "marked" limitations means a limitation that is "more than moderate" but "less than extreme." *Id.* A child has an "extreme" limitation in a

9

domain when his impairment(s) "interferes very seriously" with his "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). The regulations also provide that an "extreme" limitation also means a limitation that is "more than marked." *Id.* However, "extreme" limitation does not mean a "total lack or loss of ability to function." *Id.*

In this case, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets, medically equals, or functionally equals any of the listed impairments. AR 21-22. Specifically, the ALJ found Plaintiff had less than marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, no limitation in the ability to care for himself, and no limitation in health and physical well-being. AR 24-28. Because Plaintiff did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the criteria of any Listing, the ALJ determined that he was not disabled prior to attaining age 18. AR 28.

### 2. Adult Standard

The Commissioner has established a five-step sequential analysis to determine whether an adult Social Security claimant is disabled. 20 C.F.R. § 416.920(a); 20 C.F.R. § 404.1520[4]. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990); *see also* 20 C.F.R. § 416.920(a)(4). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

First, the ALJ must determine whether the claimant is performing "substantial gainful activity," which mandates that the claimant be found not disabled regardless of medical condition,

---

[4] 20 C.F.R. § 404.1520 refers to disability evaluations in general; 20 C.F.R. § 416.920 is evaluations of adults in particular.

10

age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(i), (b). As noted, the ALJ determined Plaintiff had not performed substantial gainful activity since July 23, 2007. AR 21.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Act and which meets the duration requirement as established in § 416.909.[5] 20 C.F.R. § 416.920(a)(4)(ii), (c). If no severe impairment is found—or none which meets the durational requirement—the claimant is not disabled. *Id.* § 404.1520(c). The ALJ determined Plaintiff had the following severe impairments: status-post traumatic brain injury and a personality disorder. AR 21. The ALJ also determined Plaintiff had not developed any new impairment since attaining age 18. AR 28.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step. *Id.* § 416.920(a)(4)(iii). At this step, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 and the duration requirement. *Id.* If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, and meets the duration requirement, he is conclusively presumed to be disabled, without considering age, education and work experience. *Id.* § 416.920(d). The ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 28.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). *Id.* § 416.920(a)(4). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. *Id.* § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. *Id.* § 404.1545(e). Here, the ALJ determined Plaintiff has the RFC "to perform a full

---

[5] "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 416.909.

11

range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] should take reasonable precautions including avoiding work at heights or around dangerous moving machinery." AR 29. Furthermore, "[Plaintiff] retains the abilities to engage in simple, repetitive tasks equating to unskilled work in an environment requiring little to no interaction with the public." *Id.*

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), (f). Past relevant work is work performed within the past 15 years that was substantial gainful activity and lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. *Id.* § 416.920(a)(4)(iv). Additionally, if there is not sufficient evidence of past relevant work to determine a finding in this step, the ALJ may proceed to the fifth step. *Id*. § 416.920(h). Here, the ALJ determined Plaintiff had no past relevant work. AR 29a.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.960(c); *see also* 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff was able to perform, even with a limitation to unskilled work with reduced public interaction. AR 29a-b.

### D.     Plaintiff's Appeal

The ALJ's decision became final when the Appeals Council declined to review it on June 20, 2014. AR 4-6. Having exhausted all administrative remedies, on July 23, 2014, Plaintiff timely filed this action for judicial review under 42 U.S.C. § 405(g). Dkt. No. 1. On March 19, 2015, Plaintiff filed the present Motion for Summary Judgment. Dkt. No. 21. On April 16, 2015,

the Commissioner filed a Cross-Motion for Summary Judgment. Dkt. No. 25.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). Substantial evidence means more than a scintilla but less than a preponderance of evidence and that a reasonable person might accept as adequate to support a conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

The decision whether to remand for further proceedings is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1175-79 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179.

//

//

13

**DISCUSSION**

**A.     Overview**

Plaintiff asserts three primary bases for why the ALJ erred or alternatively why this case should be remanded under 42 U.S.C. § 405(g). Pl.'s Mot. at 1. First, Plaintiff contends there is "significant new and material evidence" not included in the administrative record that warrants remand under sentence six or at least establishes the ALJ failed to fully develop the record, supporting remand under sentence four. *Id.* Second, based on his July 2007 benefits application, Plaintiff contends the ALJ should have found him disabled as a child due to at least (i) organic mental disorder and (ii) personality disorders due to persistent disturbed personality, mood, impulse control and judgment and marked impairments in at least cognitive and social function for at least one year. *Id.* (citing Listing 112.02 and Listing 112.08). Finally, as there was insufficient evidence of sustained improvement, Plaintiff argues the ALJ also should have found him disabled as an adult. *Id.* (citing Listing 12.02 and Listing 12.08).

Defendant did not directly respond to Plaintiff's arguments, seemingly daunted by the format of Plaintiff's Motion, which contains over 30 sections that Defendant claims allege "all manner" of error against the ALJ. Def.'s Mot. at 2 (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003), which states "[w]hen reading [plaintiff's] brief, one wonders if [plaintiff], in its own version of the spaghetti approach, has heaved the entire contents of a pot against the wall in hopes that something would stick. We decline, however, to sort through the noodles in search of [plaintiff's] claim."). Instead of addressing Plaintiff's arguments, Defendant responds by attempting to show the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision. *Id.*

While Plaintiff's Motion is certainly not a model of clarity, the Court finds he has put forward discrete arguments that are capable of review.

**B.     New Evidence and ALJ's Failure to Develop the Record**

Plaintiff argues there are "[n]ew and material records includ[ing] at least a 2007 psychological assessment, a 2009 psychological assessment, and a 2008 multidisciplinary team

14

assessment." Pl.'s Mot. at 6-7. Plaintiff contends the 2007 assessment performed by Plaintiff's school psychologist, Dr. Mitchell Biermann, Ph.D., indicated "marked" limitations in three functional areas. *Id.* at 7-9.[6] Plaintiff submitted this evidence with his briefing, appended as Exhibits A-D of Mr. Ragnes' Declaration. *See* Dkt. No. 23. Plaintiff asserts "[g]ood cause exists for the materials not being provided earlier (e.g., to the Appeals Council) because the ALJ failed to provide a proper list of Exhibits upon which he based his decision." Pl.'s Mot. at 7; *see* AR 29c (document entitled "List of Exhibits" with no documents or citations included). Plaintiff claims his counsel attempted to correct this "deficiency" following the ALJ's decision, but the Commissioner failed to do so. Pl.'s Mot. at 7. Finally, Plaintiff contends the ALJ failed to fully and fairly develop the record before issuing his unfavorable decision. *Id.* at 9-11.

1. Legal Standards

First, under the Social Security Act, the district court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Thus, "in determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is *material* to a disability determination and whether a claimant has shown *good cause* for having failed to present the new evidence to the ALJ earlier." *Mayes v. Massanari*, 276 F.3d 453, 461-62 (9th Cir. 2001) (emphasis added).[7] This type of remand is known as a "sentence-six" remand. *See Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993).

---

[6] Dr. Biermann's report states Plaintiff "has a serious emotional condition, and he has exhibited the following characteristics over a long period of time and to a marked degree: a. An inability to build or maintain satisfactory interpersonal relationships. b. Inappropriate types of behavior or feelings under normal circumstances. c. A general mood of unhappiness or depression." Dkt. No. 23-2 at ECF page no. 30.

[7] The Ninth Circuit in *Mayes* explicitly notes it "need not decide whether good cause is required for submission of new evidence to the Appeals Council . . . ." 276 F.3d at 461 n.3; *Boucher v. Astrue*, 2010 WL 2635078, at *1 (W.D. Wash. June 25, 2010) (court may remand for consideration of evidence submitted to the Appeals Council without a showing of good cause or materiality). Plaintiff appears to have submitted or attempted to submit the evidence he seeks review of here to the Appeals Council in September 2013. Ragnes Decl., Ex. E.

15

"To be material under section 405(g), the new evidence must bear 'directly and substantially on the matter in dispute.'" *Mayes*, 276 F.3d at 462 (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). The claimant must also demonstrate there is a "reasonable possibility" the new evidence would have changed the outcome of the administrative hearing. *Id.*; *see also Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984). As for good cause, a claimant does not meet the requirement "by merely obtaining a more favorable report once his or her claim has been denied." *Mayes*, 276 F.3d at 463. "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Id.* (citing *Key*, 754 F.2d at 1551 ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied"). Courts often interpret the good cause requirement liberally where there is no indication that a remand to consider new evidence would result in prejudice to the Commissioner. *Burton v. Heckler*, 724 F.2d 1415, 1417-18 (9th Cir. 1984). Courts have also found the good cause requirement satisfied where the claimant was unaware of the need to obtain updated medical reports from his physicians until he received the administrative record. *See Held v. Colvin*, __ F. Supp. 3d__, 2015 WL 926272, at *8 (N.D. Cal. Mar. 2, 2015).

Second, ALJs in Social Security proceedings have a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (citation and internal marks omitted); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) ("[T]he ALJ should not be 'a mere umpire' during disability proceedings. Rather, the ALJ has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." (citations omitted)). "The ALJ has a duty to develop the record . . . even when the claimant is represented by counsel." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (citation omitted). The ALJ's duty is also heightened in cases where the claimant has mental impairments and may not be able to protect his own interests. *Id.*

But the ALJ is only required to develop the record further when there is ambiguous

16

evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes*, 276 F.3d at 459-60; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." (quotation and internal marks omitted)). "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010). Thus, "[i]f the ALJ thought he needed to know the basis of [a doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them." *Smolen*, 80 F.3d at 1288; *Tonapetyan*, 242 F.3d at 1150.[8]

2. <u>Application to the Case at Bar</u>

Two considerations lead the Court to conclude the ALJ's duty to develop the record was triggered. First, at the initial hearing, the ALJ acknowledged there were discrepancies and gaps in the record. Specifically, the ALJ recognized "we have discrepancies between [Plaintiff's electronic and paper social security] files" (AR 351) and also indicated that more psychological testing would be warranted in Plaintiff's case. *See* AR 356, 363 (ALJ recognized Plaintiff's "representative has indicated that perhaps testing would be appropriate" and that the ALJ "agree[d] that . . . psychological testing on a consultative examination would be warranted"). The ALJ also noted the medical expert indicated he did not "have much there [] to go on . . . other than the history, no testing . . . . no assessments." AR 356; *see also* AR 358; 361-62 (medical expert indicated further testing would be useful to confirm his conclusion).

Second, the record refers to other evidence that is not in the record, which indicates some

---

[8] The regulations require the SSA to make "every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources[.]" 20 C.F.R. §§ 404.1512(d), 416.912(d). This may include having to re-contact the treating physician, or request additional records when the doctor has provided inadequate information. *Id.* §§ 404.1520b(c), 416.912(e). The regulations further note that if a claimant who alleges his disability began less than 12 months before filing his application, the SSA "will develop your complete medical history beginning with the month you say your disability began." 20 C.F.R. § 404.1512(d)(2).

17

ambiguity and that may have been helpful to the ALJ's analysis, given the lack of testing and assessments. For example, the record contains reference to multiple psychological assessments not sought by the ALJ, including: (1) a "psych evaluation completed when in detention" in January 2007, a few months before Plaintiff's injury (AR 172); (2) a psychoeducational evaluation "in 2007" by Dr. Biermann and Mr. Jones finding that Plaintiff's "emotional condition, impulsivity, and distractibility were negatively impacting his academic performance" (AR 213); (3) evidence Plaintiff "met regularly with psychiatrist, Benjamin Kaufman, M.D." around January 2010 (AR 193); and (4) Plaintiff's statement to Dr. Burstein that he had received counseling from Mike Ertz, MFT, of Marin County Community Mental Health for over two years, and starting in September 2010, had attended counseling twice weekly with Cesar Lagleva, MFT, at Juvenile Hall (AR 319-20).

While the ALJ discussed Dr. Biermann's evaluation in his decision, there is no indication the ALJ ever reviewed the actual report, as opposed to a summary of the report by third-parties. *See* AR 213. Indeed, Dr. Biermann's actual report is not in the record, and the summary of his report does not include the date of the report, instead merely stating that an evaluation was done sometime in 2007.[9] *See id.* Furthermore, there is no suggestion the ALJ reviewed evidence from psychiatrist, Benjamin Kaufman, M.D., who Plaintiff "met regularly with" around January 2010. AR 193. Dr. Kaufman treated Plaintiff around the same time his Treatment Team expressed "concern that the head injury that [Plaintiff] suffered earlier [in 2007] could have resulted in more damage to his emotional development than previously thought." AR 194. They also expressed concern that "[a]lthough on the surface he seemed to be making progress" his behavior "show[ed] a deep level of maladaptive development." *Id.* Additionally, the ALJ acknowledged inadequacies in the record and the need for more evidence as stated by both Plaintiff and the medical expert, but never clarified why that evidence was not sought. AR 351, 356, 358, 361-63.

Having encountered these ambiguities and indications that more evidence was needed,

---

[9] Dr. Biermann and Bart Jones's report was issued on December 19, 2007. *See* Ragnes Decl., Ex. B.

there is no indication the ALJ then attempted to further develop the record by, for instance, having Plaintiff undergo psychological testing or by attempting to uncover whether he underwent psychological testing in the past. *Cf. Boyd v. Astrue*, 2011 WL 5515249, at *3 (W.D. Wash. Nov. 9, 2011), *aff'd sub nom. Boyd v. Colvin*, 524 F. App'x 334 (9th Cir. 2013) (finding no duty to further develop the record where there was "no indication that the ALJ found the evidence to be ambiguous or the record to be inadequate."). Although requested by Plaintiff, it is not clear that the discrepancies in the electronic files and the paper files were ever resolved. *See* Ragnes Decl. ¶ 5 ("Upon review of the [AR] provided by opposing counsel, I reviewed the records in my possession both on my desktop computer and the CD's provided to me by the hearing office staff and found that the AR for exceedingly incomplete as to the sum of the two claims.").

Given the ambiguities the ALJ identified at the hearing and in his decision, as well as the statements by the medical expert and the state agency psychologists that the evidence was insufficient to assess Plaintiff's disability claims, the ALJ had a duty to develop the record further by asking for and seeking out additional information. *See, e.g.*, *Tonapetyan*, 242 F.3d at 1151 ("the ALJ was not free to ignore [the medical expert's] equivocations and his concern over the lack of a complete record upon which to assess [the claimant']s mental impairment. Moreover, he was not free to ignore [the medical expert's] specific recommendation that a more detailed report . . . be obtained. That he did so constitutes reversible error."); *Smith v. Colvin*, 2015 WL 1814433, at *8 (N.D. Cal. Apr. 21, 2015) ("If the ALJ had an issue regarding the onset date, he had a duty to develop the record further by asking [the doctor] for additional information; instead the ALJ simply discounted [the doctor's] opinion without making any inquiry."); *Held*, 2015 WL 926272, at *6 ("[T]he ALJ failed to satisfy his duty to conduct a full and fair inquiry by not taking further steps to obtain additional medical evidence in light of inadequacies within the record."). Because the ALJ did not fully and fairly develop the record with respect to Plaintiff's possible impairment(s)—which may have affected the ALJ's disability assessment, particularly when

19

Plaintiff was a minor[10]—remand is appropriate under sentence four of § 405(g).

While Plaintiff also argues for remand and an instruction to consider new evidence under sentence six of § 405(g), the Court finds this request unnecessary in light of its findings on the current inadequacies in the record and the ALJ's duty to develop that record.  The Court is confident the ALJ will develop the record appropriately on remand.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Remand and **DENIES** Defendant's Motion for Summary Judgment.  This action is **REMANDED** for further development of the record under sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: October 1, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

---

[10] Of particular importance is whether there is evidence that Plaintiff had a "medically determinable physical or mental impairment, which result[ed] in marked and severe limitations," and which lasted for at least a period of 12 months or longer.  42 U.S.C. § 1382c(a)(3)(C)(i).